John D. SENCHAL and Grace Senchal, husband and wife, and Thelma Harkreader, Appellants,

v.

V. H. CARROLL, as Trustee of Raymond H. Gestes, Sole Trader, d/b/a All American Fence Company, a/k/a Wichita Fence Co., a/k/a Denver Fence Company, Appellee.

No. 9352.

United States Court of Appeals Tenth Circuit.

May 23, 1968.

Reagan M. Martin, Dallas, Tex. (Harvey L. Davis, Dallas, Tex., on the brief), for appellants.

Robert C. Bailey, Oklahoma City, Okl. (Thomas G. Marsh, Tulsa, Okl., on the brief), for appellee.

Before LEWIS, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

The trustee for the bankrupt commenced this action to set aside transfers of money and property made by the bankrupt, and require that the property be revested in the trustee. The trial court granted judgment for the trustee, and this appeal was taken. Appellants urge two grounds for reversal; that their request for a jury trial was improperly denied, and the trial judge should have disqualified himself.

The property transferred to appellants as listed in the exhibit attached to the complaint in this plenary action included real estate, office furniture and equipment, automobiles and trucks, some twenty-five race horses, several head of cattle, and money. The money alleged in the complaint to have been transferred in cash was stated to be in excess of $200,000. The complaint prays that the conveyances be decreed to be fraudulent,

that they be set aside, that the defendants be required to account for, return, and reconvey the property to the trustee, and a restraining order be issued.

The appellants counterclaimed for judgment in a stated amount or, in the alternative, that a claim against the trustee be established for such amount. The basis for the claim alleged was the bankrupt's failure to construct a paddock and other improvements on the real estate conveyed to them by the bankrupt, and sought to be revested in the trustee.

The trial court ordered the appellants to reconvey the personal and real property with all rents, profits, and increase (less expense of preserving the assets), and to turn over any receipts from the sale of any assets. The court also ordered that funds previously ordered to be paid by appellants to the clerk of the court be turned over by the clerk to the trustee, and that funds held by a bank under order of the court be transferred to the trustee.

The relief sought by the complaint is described above, and basically, the court was asked to revest the property in the bankrupt's estate. To afford the relief sought the court would have to order formal reconveyances of some of the property and delivery of other items, all of which would require affirmative action by the defendants with reference to the particular property listed. As mentioned above, no damages were sought nor money judgment prayed for. The remedy sought required and included an accounting, as the accounts were involved and lengthy. The trial lasted some nine days and several hundred accounting exhibits were introduced.

The Supreme Court in recent years has decided several significant cases concerned with the right to a jury under the Seventh Amendment. Among these are Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988, and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44.

In Dairy Queen there were combined claims in equity and for a money judgment. The claim basically was for either a breach of contract or for trademark infringement. The Supreme Court there considered the rules providing for the joinder of legal and equitable actions and pointed out the provisions of Rule 38(a) of the Rules of Civil Procedure. The Court reviewed its holding in Beacon Theatres with respect to the trial of legal issues first to a jury when they are combined with equitable issues. The Dairy Queen complaint asked for an accounting covering the contract period and this would have been somewhat complicated. The Court notices that there may be cases of such nature so complicated that only a court of equity can "unravel" them but they will be most unusual. The Court held that the parties had a right " * * * to have the jury determine not only whether the contract has been breached and the extent of the damages if any but also just what the contract is." See also Johnson v. Gardner, 179 F.2d 114 (9th Cir.).

The earlier case of Beacon Theatres concerned contracts to show exclusively first-run motion pictures, and protection from others showing the same films until a certain time had elapsed. The complaint also alleged a controversy under the antitrust act. The trial court found the portions of the complaint seeking declaratory relief were equitable, but the Supreme Court held that the right to a jury in the treble damage aspect would prevail over all. The Court thus held that the equitable issues and defenses could be properly handled, but that the legal issues should be tried first. The Supreme Court in Dairy Queen said, "Beacon Theatres requires that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury." See also Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691, where the issue was the amount of attorney fees to which petitioner was entitled under a contingent fee retainer contract.

In the case at bar the action is basically an equitable one calling for relief which only equity can afford. It is

not a part of the bankruptcy proceedings, but is an independent equitable proceeding seeking to revest property in the bankrupt's estate. We hold that under the authorities discussed above the trial court was correct in refusing appellants' request for a jury.

The appellants urge that the case of Schoenthal v. Irving Trust Co., 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185, requires that a jury trial be held; however, the complaint there sought only to recover $500 from one defendant and $1000 from another. The action was thus for a money judgment alone in the stated amounts although the basis for recovery was an asserted preference under the Bankruptcy Act. The Supreme Court there held that a jury was required. The Court said, "The facts here alleged give no support to plaintiff's assertion that it has no adequate remedy at law. The preferences sued for were money payments of ascertained and definite amounts. The bill discloses no facts that call for an accounting or other equitable relief." We do not consider that the cited case leads to a conclusion contrary to that stated above, nor did the counterclaim change the nature of the action.

The appellants sought to disqualify the trial judge because statements he made at the hearing for the temporary restraining order indicated that he had then made up his mind on the merits of the case. The record shows that the trial judge at the hearing said that he saw the transfers by the bankrupt as an attempt to "swindle" the creditors.[1]

It is apparent that the trial judge had to take a position at the hearing for a temporary restraining order in this case where fraudulent transfers were asserted and where the unusual nature of the property indicated some method to retain the status quo. It was incumbent upon the appellants to then make a strong showing on at least the irreparable damage aspect in order to obtain the restraining order. They also had to make some showing of a likelihood that they would prevail on the merits. The preliminary hearing took some four days of trial and many exhibits were introduced. The trial judge used strong language in his statements at the conclusion of the hearing, but it was necessary that he be convinced before a restraining order could issue. We do not consider that his statements of his views at that time necessarily disqualify him from proceeding with the trial. These circumstances do not bring this case within Frito-Lay, Inc. v. Morton Foods, Inc., 316 F.2d 298 (10th Cir.). The trial judge was not disqualified and had a duty to proceed.

Affirmed.

---

1. At the conclusion of the hearing on the temporary injunction the trial court said:

"THE COURT: Gentlemen, I want to say this, with all the evidence all in, I have no hesitancy in saying that I am absolutely convinced that this some $250,-000 drawn out of the All American Fence Company in hundred dollar bills by Mr. Gestes over the period of say the last nine or ten months has gone to these sisters, and that is the money we have been talking about. They haven't saved this kind of money. It isn't possible to ex-pect any court to believe that they had saved this kind of money out of the income that they have had, and I see this clearly as a giant swindle or an attempt to swindle the creditors of this bankrupt, and I have no qualms about it at all in saying that this restraining order will be continued in full force and effect, * * *."

This was followed by a discussion whether the race horses should be entered in claiming races or not.